## Agnew's Estate.

*Life tenant—Oil lease—Royalties—Contract—Act of February* 24, 1834, *P. L.* 74.

Where a tenant for life and a remainder-man join in an oil lease, and in an agreement, by which the annual rental payable in advance was to be divided during the life tenant's life, in proportion of two thirds to the life tenant and one third to the remainder-man, and after the life tenant's death the entire amount was to go to the remainder-man, and it appears that on the day the rent became due two thirds of it was paid to the life tenant who died thirty-five days thereafter, the remainder-man has no right to collect from the life tenant's estate any portion of the rental which had been paid to the life tenant in the latter's lifetime.

*Statute of limitations—Executors—Legal demand.*

Where a written statement of claim against a decedent's estate is presented to the auditor appointed to audit the account of the decedent's executor, and the statement is answered by an affidavit of the executor, the running of the statute of limitations is barred by the presentation of the claim to the auditor.

Argued April 16, 1901. Appeal, No. 16, April T., 1901, by John B. Keenan, from decree of O. C. Westmoreland Co., Aug. T., 1893, No. 62, confirming auditor's report in the estate of James Agnew, deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Exceptions to report of Eugene Warden, Esq., auditor.

The facts are fully stated in the opinion of the Superior Court.

*Error assigned* was the decree affirming the auditor's report.

*Paul H. Gaither*, with him *Cyrus E. Woods*, for appellant, cited: Act of February 8, 1833, sec. 5; Act of February 24, 1834, secs. 7, 30; Waugh v. Waugh, 84 Pa. 350.

*V. E. Williams*, for appellees, filed no paper-book.

OPINION BY BEAVER, J., May 23, 1901:

The principal facts in this case are not in dispute and are specifically found by the auditor. Agnew, the life tenant, leased to Guffey certain premises to be operated for oil and gas at an annual rental of $1,000, payable in advance. The lease was ratified and confirmed by Kearney, the remainder-man, by a supplemental agreement, assented to by Agnew, by virtue of which the rentals were to be divided during Agnew's life in the proportion of two thirds to Agnew and one third to Kearney; and, after Agnew's death, the entire amount to go to Kearney. Agnew received from Guffey, April 29, 1892, (the day it became due under the agreement) $666, his proportion of the rent, and died June 2, subsequently.

In the distribution of the balance in the hands of Agnew's executor, Kearney claimed so much of the amount paid Agnew April 29, 1892, as he alleged to be due him under the agreement of the parties after Agnew's death. The auditor awarded him $600 and interest thereon from the date of Agnew's death, amounting in all to $876.10, whose finding, upon exception, was confirmed by the court below. This decree of confirmation is appealed from, and the finding claimed to be erroneous for two reasons:

1. The rent, being payable in advance by the terms of the original lease and of the supplemental agreement, accrued in the lifetime of the life-tenant and his proportion thereof, as provided in the agreement, was properly payable to him. This question is raised by all the assignments of error, and the legal proposition which is involved therein is in our opinion sustainable and sound. When did the rent due under the Guffey lease accrue? Clearly when it became due. The primary meaning of the word "accrue," according to Anderson, is "to be or become added to; to fall due." "Accrued." "Due and payable." The rent for the one well and the forfeit money for the failure to put down the second were made by the terms of the

agreement due and payable on April 29, 1892. If not paid on that day, Agnew could undoubtedly have sustained his action for its recovery. If he had died the same day or the day following, and his personal representatives had brought suit for its recovery, would it have been a defense to the action to say that the lease was determined by the death of the life-tenant, and that the entire rent was to be paid thereafter to Kearney, the remainder-man? Surely not. The rent had accrued, the rights of all parties had become fixed, the terms of the agreement were binding, and determined to whom and in what proportions the rent was payable. If Guffey, therefore, could not have avoided payment under such circumstances, in what better position is Kearney, who expressly agreed that the entire rental should be paid in advance and should be divided when paid in the proportions of one third to him and two thirds to Agnew. Will it be pretended that Kearney could have recovered from Guffey, because of his payment to a person not legally entitled to receive the money when paid? If not, and Agnew was legally entitled to receive the money when paid, as he undoubtedly was, upon what legal principle can his estate be compelled to refund it? The court below places it upon the ground that Agnew held the money in trust for Kearney in case his life tenancy ceased within the year, at least for that portion of the year which followed his death. But no such trust is created by the terms of the agreement between the parties and certainly the law raises none.

The 7th section of the Act of February 24, 1834, P. L. 74, provides that "the rents of any real estate accruing to any tenant for life of such estate who had demised the same for a term of time not fully expired at his decease shall go to and be vested in the executors or administrators of such tenants; and the due proportion of such accruing rent, to be computed according to the time elapsed at the decease of such tenant, shall be included in the inventory of personal assets." But this section relates to rents accruing, not to those which had accrued; and, if it has any application to this case, would by inference at least indicate that rents which had accrued would be properly included in the estate of a deceased life tenant. The 30th section of the same act gives a right of action to "executors or administrators of any tenant for life who shall die before or on a

day on which any rent was reserved or made payable upon any
demise or lease which determined on the death of such tenant
for life, if on the day when such rent was made payable the
whole amount thereof," etc.   The plain intent and meaning of ·
this section is that, if Agnew had died on April 29, his execu-
tor could have sued for and recovered the two thirds of the rent
made payable to him by the terms of the agreement.   It is quite
true, as intimated by the court below, that the contract of the
parties is the law of the case, but the contract was construed as
if the rent had accrued subsequently instead of prior to the
death of the life tenant.   This is the fundamental question in
the case and, as we have endeavored to show, was viewed from
the wrong standpoint by the court below.

2. In view of what has been said, the second position of the
appellant becomes unimportant, but it is proper to say that it is ·
untenable.   The running of the statute of limitations was barred
by the formal demand, based upon a statement by the claimant
and answered by an affidavit of the executor in the orphans'
court within two years after the payment to Agnew.   This is
to be regarded as an equivalent to an action in a court of law.
It was not a mere demand upon the executor but a legal demand
such as is recognized and approved in Keyser's Appeal, 124 Pa.
80.

The decree of the court below is reversed, the exceptions to
the auditor's report, so far as they relate to the claim of the ap-
pellee, are sustained, and the record is remitted to the court be-
low, in order that distribution may be made in accordance with
this opinion and decree.